Nicholas MORGAN, Plaintiff,

v.

The COUNTY OF NASSAU, a municipal entity; Nassau County Commissioner of Police Lawrence W. Mulvey; Nassau County Police Officer "Michael" Quagliano; Nassau County Police Lieutenant Nicholas Pandolfo, Commanding Officer, Mounted Unit; Nassau County Police Officer Christopher P. Maker, Shield No. 1578 individually and in their official capacities; and John Does 1–10, Nassau County Police Officers, Supervisors and/or Commanders, individually and in their official capacities, Defendants.

No. 09–cv–4168 (ADS)(AKT).

United States District Court, E.D. New York.

July 1, 2010.

231

Beldock, Levine & Hoffman LLP by Jonathan C. Moore, Esq., Vera M. Scanlon, Esq., of Counsel, New York, NY, for plaintiff.

Leeds Morelli & Brown, P.C. by Matthew Brian Weinick, Esq., of Counsel, Carle Place, NY, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Nicholas Morgan is a U.S. Army veteran who served in Iraq, and is a member of a group called Iraq Veterans Against the War. Morgan alleges that he attended a protest of the Iraq War at the second presidential debate at Hofstra University on October 15, 2008, and that Nassau County Police Officers assaulted and falsely arrested him for this exercise of his rights. The defendants now move to dismiss Morgan's complaint for failure to state a claim. For the reasons that follow, the Court grants this motion in part and denies it in part.

## I. BACKGROUND

The following facts are taken from the plaintiff's complaint. As required in reviewing a motion to dismiss, the Court accepts the alleged facts as true, and draws all reasonable inferences in favor of the plaintiff.

The plaintiff Nicholas Morgan was an active duty member of the United States Army from 2003 to 2006, and was deployed as a heavy construction equipment operator in Iraq from February 2004 to February 2005. Some time after returning from Iraq, Morgan joined the Iraq Veterans Against the War ("IVAW"), a group of current and former servicemen opposed to the war in Iraq.

On October 15, 2008, approximately two years after Morgan was discharged from the Army, Hofstra University hosted a presidential debate between then-Senators John McCain and Barack Obama. In connection with this event, IVAW organized a protest of the Iraq War to take place during the debate. Morgan traveled to Nassau County from his residence in West Virginia, and attended the protest wearing his Army-issued desert camouflage uniform. Approximately two hundred to three hundred protesters, including many individuals who were not members of the IVAW, also attended the rally.

The area of the Hofstra campus where the October 15, 2008 debate was held is bordered on the south by Hempstead Turnpike, and there is an entrance to the campus from that road. The IVAW staged the demonstration near this access point, which serves as a main entrance to the University. Security at the entrance along Hempstead Turnpike was provided by the Nassau County Police Department ("NCPD"), who deployed officers there both on foot and on horseback. These officers established a "police line" near the entranceway to the campus where the protest was staged.

Prior to the demonstration, IVAW had informed the Nassau County Police that certain IVAW members would act in "civil disobedience," and seek to enter the debate hall to pose questions to the presidential candidates. Thus, around 7:00 p.m., a number of Iraq veterans—not including Morgan—approached the "police line" and requested entrance to the University campus. The NCPD arrested these individuals. Morgan in no way participated in this activity, and was not arrested at that time.

Directly following these arrests, the NCPD began to "forcefully and aggressively move the rest of the crowd of demonstrators away from the entrance to Hofstra University ... onto a sidewalk area that was too crowded for the demonstrators to move into or stand safely." (Compl., ¶¶ 36, 37.) To accomplish this, the police officers who were mounted on horseback backed and "sp[un]" (Compl., ¶¶ 39–40) their horses into the crowd. In the course of moving the crowd in this way, the police officers and their horses injured several protestors.

When the police officers started to move the crowd using their horses, Morgan was at the front of a group of protestors, and was directly in front of the police horses. Defendant Nassau County Police Officer Michael Quagliano was one of the mounted police officers moving the crowd, and Quagliano's horse hit Morgan as he moved the crowd toward the sidewalk. Eventually, Morgan arrived at the sidewalk onto which the police was moving the crowd. There, he saw unnamed police officers "grab Geoff Millard, a demonstrator, without justification or cause, and pull him off the sidewalk." (Compl., ¶ 41.)

Then, while still standing on the sidewalk, Morgan "was knocked or pushed to the ground by one or more NCPD officers." (Compl., ¶ 42.) Before Morgan could return to his feet, Officer Quagliano's police horse stepped on Morgan's head. Morgan lost consciousness and lay on the ground bleeding. Later, Morgan discovered that, as a result of being stepped on by Quagliano's horse, "his cheekbone was crushed, his lower orbital was shattered, his nose was broken, he had a large knot on the back of his head, and he was severely bruised." (Compl., ¶ 64.)

While Morgan lay on the ground, no police officers provided him with medical care. Rather, the officers "attempt[ed] to prevent other demonstrators from providing medical assistance to Morgan." (Compl., ¶ 47.) Then, "at some point," Nassau County police officers dragged Morgan "across the street," handcuffed him, and placed him in a bus with other arrestees from the demonstration. (Compl., ¶ 48.) Although Morgan is somewhat unclear in alleging who arrested him, the Court construes the complaint to assert that defendant Nassau County Police Officer Christopher P. Maker effected the actual arrest. (See Compl., ¶ 77(a).) Morgan also specifically asserts that Maker falsely indicated on Morgan's "desk appearance ticket" that Morgan had walked into a traffic lane in violation of the police officers' barriers and directives.

Morgan does not indicate at what point he regained consciousness, but after he had been placed on the bus with the other arrestees, he accepted an offer from a police officer to be taken to a hospital. At that point, Nassau County police officers took Morgan to Nassau County Medical Center, where he was treated for his injuries and scheduled for an appointment with the facial surgery department.

Morgan was then released from the hospital and taken to a Nassau County police station for processing. At the Nassau County police station, unidentified Nassau County police officers "told Morgan and other arrestees that they were 'cowards' and 'traitors'." (Compl., ¶ 55.) Finally, after being issued a desk appearance ticket, Morgan was released from custody in the early morning hours of October 16, 2008.

At the time of his release, the police officers directed Morgan to appear with the other protestors for arraignment on November 10, 2008. Morgan timely appeared and was charged with disorderly conduct, but the charge was ultimately dismissed. Neither Morgan nor the other arrestees from the protest were ever prosecuted for their activities at the demonstration.

On September 28, 2009, after complying with the state law notice of claim requirements, Morgan commenced the present action against the following defendants: Officer Michael Quagliano, Officer Christopher P. Maker, Nassau County Police Commissioner Lawrence W. Mulvey, Nassau County Police Lieutenant Nicholas Pandolfo, Nassau County, and ten unnamed "John Doe" Nassau County police officers. The plaintiff asserts federal claims against

all of these defendants pursuant to 42 U.S.C. § 1983, and names the following substantive violations of his rights: (1) violation of his First Amendment rights to speech and assembly, (2) false arrest, (3) excessive force, (4) abuse of process, (5) violation of his Fourteenth Amendment right to equal protection under the law, (6) deliberate indifference to the plaintiff's medical condition, and (7) failure to intervene. The plaintiff also asserts the following state law claims against all of the defendants: (1) violation of his New York State constitutional rights, (2) false arrest and false imprisonment, (3) assault and battery, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) negligence. For relief, the plaintiff seeks (1) a declaration that his rights have been violated and monetary damages for those violations, (2) a declaration that "the use of horses by NCPD police officers against demonstrators as a means of crowd control when no emergency or exigent circumstances exist is unconstitutional as a matter of law", and (3) an order requiring the NCPD to provide additional training to their mounted officers.

The defendants now move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss all of the plaintiff's claims for failure to state a claim and for lack of standing. The plaintiff opposes this motion in its entirety.

## II. DISCUSSION

### A. As to the Plaintiff's Proposed Amended Complaint

As a preliminary matter, the Court notes that the plaintiff has submitted a proposed amended complaint in connection with his opposition to the defendants' motion to dismiss. The plaintiff requests that the Court analyze this motion to dismiss with respect to this proposed amended complaint, instead of the original complaint. However, because the plaintiff did not file his proposed complaint within twenty-one days of the defendants' filing of their motion to dismiss, the plaintiff may no longer amend his complaint as of right. *See* Fed.R.Civ.P. 15(a)(1)(B). In addition, to the extent the plaintiff seeks to amend his complaint with the Court's leave, the plaintiff has not properly moved for such relief. Therefore, the plaintiff's original complaint remains the only complaint in this case properly before the Court. To the extent the plaintiff presently moves for leave of the Court to amend his complaint, the Court denies this motion without prejudice to renew in the proper form.

### B. Standard on a Motion to Dismiss

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and com-

mon sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950.

## C. As to all of the Claims Asserted Against Commissioner Mulvey, Lieutenant Pandolfo, and the Nassau County Police Officer John Doe Defendants

Before addressing, in greater detail, the plaintiff's claims against Nassau County, Police Officer Quagliano, and Police Officer Maker, the Court will now briefly address the federal and state law claims asserted against Commissioner Mulvey, Lieutenant Pandolfo, and the Nassau County Police Officer John Doe Defendants.

■ First, with respect to Mulvey and Pandolfo, the Court notes that, to sustain a Section 1983 claim against a person in his or her individual capacity, a plaintiff must allege facts showing the individual's personal involvement in causing the harm alleged. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted); *see also Gollomp v. Spitzer*, No. 06–cv–802, 2007 WL 433361, *4 (N.D.N.Y. Feb. 5, 2007) (aff'd, 568 F.3d 355, 365 (2d Cir.2009)). Generally, the position held by a supervisor, alone, will not support the conclusion that the supervisor had personal involvement in the alleged acts. *See Colon v. Coughlin*, 58 F.3d 865, 873–74 (2d Cir.1995) (holding that the high position held by defendant Commissioner of New York City Correctional Facilities was insufficient to sustain conclusory claim that he negligently trained and supervised officers).

■ Here, the plaintiff asserts that, at the time of the alleged incident, Mulvey was the Commissioner of Police for Nassau County, and Pandolfo was the commanding officer of the "Mounted Unit" for the Nassau County Police Department. While the plaintiff asserts claims against these defendants, he does not allege any specific acts done by Mulvey or Pandolfo that resulted in the harm that the plaintiff alleges. Rather, the plaintiff asserts that each is liable as a result of his respective position of authority in the Nassau County Police Department. To be sure, the plaintiff alleges that Pandolfo "knew or should have known" (Compl., ¶¶ 83, 85) about his subordinates' violations, and concludes that "[o]n information and belief, [Pandolfo was] personally involved in either ordering, or failing to take preventative measures to guard against, plaintiff's constitutional deprivations." (Compl., ¶ 86.) However, the plaintiff alleges no facts to support these conclusions, except to state Pandolfo's position of authority. The Court finds that this is insufficient to state a claim against Pandolfo in his personal capacity. Similarly, the allegation that Mulvey was the Commissioner of the Nassau County Police Department is also insufficient to state a claim against him in his personal capacity. Thus, the Court dismisses all of the Section 1983 claims asserted against Pandolfo and Mulvey in their personal capacities.

■ To the extent the plaintiff asserts state law claims against Pandolfo and Mulvey, the Court dismisses these claims as well, based on the same lack of allegations of personal involvement. In addition, the Court also dismisses the plaintiff's claims against Pandolfo and Mulvey in their official capacities, as they are duplicative of his claims against Nassau County. *See, e.g., Tsotesi v. Bd. of Educ.*, 258 F.Supp.2d 336, 338 n. 10 (S.D.N.Y.2003).

As for the unnamed John Doe Nassau County Police Officers, at this juncture the Court declines to rule on the defendants' motion to dismiss the plaintiff's claims against these individuals, except to the extent that, as described below, the Court explicitly dismisses certain claims as to all defendants. It is the Court's view that the plaintiff's current pleading may assert some valid claims against certain currently unnamed John Doe defendants. However, the Court will not presently attempt to analyze these claims in the abstract. Thus, for now, the Court denies the defendants' motion to dismiss the claims against the unnamed John Doe defendants without prejudice.

### D. As to the Section 1983 Claims Asserted Against Officers Quagliano and Maker

The plaintiff asserts numerous claims against defendants Quagliano and Maker pursuant to 42 U.S.C. § 1983, which provides individuals the right to assert causes of action against government actors for violation of substantive federal rights. The Court now addresses those causes of action.

#### 1. Federal Claims Against Quagliano and Maker: False Arrest

The plaintiff asserts that Officers Quagliano and Maker violated his federal constitutional rights to "freedom from arrest without probable cause" and "freedom from false imprisonment" through their actions as described above. (Compl., ¶ 73(f)-(g).) Pursuant to the law of this Circuit, the Court analyzes these claims under New York State law. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991) (holding that a Section 1983 false arrest claim is analyzed under local state law). New York law makes no distinction between false arrest and false imprisonment, and

the Court therefore views both of these claims together as a Section 1983 claim for false arrest. *See id.*

Under New York law, a police officer generally commits a false arrest when he arrests a person without a warrant or probable cause. *See Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003). However, a police officer is entitled to qualified immunity from suit for false arrest even when no probable cause existed, as long as a reasonable officer in the same situation *could* have believed there was probable cause for the arrest. *See, e.g., Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir.2009).

Here, the plaintiff alleges that, on the date of his arrest, he was obeying the law and the directives of the Nassau County Police at all times. The plaintiff further alleges that, in spite of this, Nassau County Police Officers arrested him without a warrant or probable cause. The defendants do not assert that they had a warrant for Morgan's arrest, but rather urge the Court to infer from the complaint that the there was probable cause to arrest the plaintiff. According to the defendants, the fact that the plaintiff alleges that he and other protestors were forcibly moved onto a sidewalk shows that they were previously illegally in the street. Moreover, note the defendants, the plaintiff describes the acts of the protestors who approached the gate to Hofstra University as "civil disobedience." According to the defendants, use of the term "civil disobedience" is an admission that these individuals were acting illegally.

In the Court's view, the plaintiff has alleged facts plausibly showing that he was arrested without probable cause, and the defendants' assertions to the contrary are insufficient to undermine this finding. While the complaint may admit of the possibility that Morgan was illegally in the

street prior to his arrest, this is not a necessary conclusion from the pleading. Therefore, it is not a conclusion that the Court may draw at this point. Rather, at the pleading stage, the Court takes the complaint in the best light for the plaintiff, and here that light reveals a scene in which it is plausible that there is no probable cause for the plaintiff's arrest.

In addition, the Court sees little relevance in the plaintiff's description of certain protestors' actions as "civil disobedience." The plaintiff makes clear that he was not one of the individuals who committed this "civil disobedience." Thus, whether or not the "civil disobedience" that the plaintiff describes was against the law—and it is not entirely clear to the Court that the complaint describes any acts by the arrested protestors that were illegal—this has no effect on the officers' probable cause to arrest Morgan.

The only remaining issue with respect to the federal false arrest claim is whether the plaintiff has asserted a valid false arrest claim against *both* Officers Quagliano and Maker. The Court is satisfied that the plaintiffs have asserted a claim for false arrest against Maker, as the plaintiff alleges that Maker effected the plaintiff's arrest. However, with respect to Quagliano, the plaintiff does not allege that Quagliano took any other actions to arrest him after Quagliano's horse allegedly stepped on him. It is thus not obvious to the Court that Quagliano participated in the plaintiff's arrest. However, taking the pleading in the best light for the plaintiff, the Court finds that it is plausible that Quagliano's acts were at least part of the efforts of the Nassau County Police to arrest the plaintiff. Thus, at this procedural stage, the Court finds that the plaintiff's false arrest claim against Quagliano may survive. The Court therefore denies the defendants' motion to dismiss the Sec-

tion 1983 false arrest claims against Quagliano and Maker.

### 2. Federal Claims Against Quagliano and Maker: Excessive Force

 The plaintiff also asserts excessive force claims against Quagliano and Maker. As a preliminary matter, the Court finds that there is no basis for a valid excessive force claim against Maker, as the plaintiff has not even alleged what, if any, physical interaction he had with Maker at the time of his arrest. The plaintiff does not dispute this conclusion, and the Court thus dismisses the plaintiff's excessive force claim against Maker.

 The plaintiff's excessive force claim against Quagliano requires greater analysis. First, the parties dispute whether the Court should analyze the plaintiff's excessive force claim under the Fourth or Fourteenth Amendment of the federal constitution. Generally, the Second Circuit has held that courts should analyze an excessive force claim related to an arrest or seizure under the Fourth Amendment, and analyze all other excessive force claims under the Fourteenth Amendment. *See Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)) In practical terms, the determination of whether to apply the Fourth or Fourteenth Amendment will dictate how stringent a standard to apply to the analysis. A Fourth Amendment excessive force claim is analyzed under an objective, reasonableness standard, while a Fourteenth Amendment claim relies on a more stringent "shocks the conscience" test. *Id.* at 416–18.

Here, the plaintiff asserts that Quagliano's actions were directly associated with the plaintiff's seizure and arrest, and the plaintiff thus maintains that the Court should therefore employ the Fourth

Amendment excessive force test. By contrast, the defendants maintain that Quagliano's actions, as alleged, only implicate the Fourteenth Amendment. The defendants therefore advocate for the application of the "shocks the conscience" test.

At present, the Court need not resolve which test to apply, because the Court is satisfied that the plaintiff has alleged facts that could plausibly support an excessive force claim under the more stringent "shocks the conscience" test. In explaining this test, the United States Supreme Court has stated that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Here, the Court finds that, taking the complaint in the best light for the plaintiff, Quagliano's alleged actions could plausibly be viewed as unjustifiably intended to injure Morgan, and thus conscience-shocking. The Court therefore denies the defendants' motion to dismiss the plaintiff's claim against Quagliano for excessive force.

### 3. Federal Claims Against Quagliano and Maker: First Amendment

The plaintiff asserts that Quagliano and Maker's actions violated his First Amendment rights to speech, assembly, and association. Although not entirely clear from the complaint, the Court understands the plaintiff to assert a First Amendment retaliation claim.

Generally, to prove a First Amendment retaliation claim, a plaintiff must show that:
(1) he has an interest protected by the First Amendment;
(2) defendants' actions were motivated or substantially caused by his exercise of that right; and
(3) defendants' actions effectively chilled the exercise of his First Amendment right.

*Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) (citing *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998)). However, if a police officer has probable cause to arrest a person, this will serve as a complete defense to any claim of First Amendment retaliation based on that arrest. *See Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 120 (2d Cir. 1995).

Here, the defendants do not dispute that the plaintiff had a First Amendment interest in participating in the protest at Hofstra University on October 15, 2008. Nor do the defendants dispute that the defendants' alleged acts chilled the plaintiff's exercise of his First Amendment rights. However, the defendants assert that the plaintiff has not alleged facts sufficient to satisfy the second prong of the test, which requires that the plaintiff show that the defendants' acts were "motivated or substantially caused" by the plaintiff's exercise of his First Amendment rights. *Curley,* 268 F.3d at 73. In addition, the defendants assert that there was probable cause to arrest the plaintiff, thus barring any First Amendment claim.

The Court has already addressed the issue of probable cause, and found that, under the facts alleged, it is plausible that there was no probable cause for the plaintiff's arrest. Thus, this issue presents no bar to the plaintiff's First Amendment claim.

The Court also finds that the plaintiff has alleged sufficient facts to support an inference that the defendants' acts were plausibly motivated by the plaintiff's exercise of his First Amendment rights. First, the plaintiff alleges that the defendants

assaulted and arrested him directly following his allegedly peaceful and lawful exercise of his First Amendment rights. At the pleading stage, this alone is sufficient to show a plausible intention to retaliate. In addition, the plaintiff also specifically asserts that Nassau County Police Officers at the Nassau County Police Station "harassed, mocked and taunted" him and other protestors, and called them "cowards" and "traitors." (Compl., ¶ 55.) While these statements are not ascribed directly to Maker or Quagliano, the Court finds that, at this stage, these allegations provide circumstantial support for Quagliano's and Maker's retaliatory motive. The Court therefore denies the defendants' motion to dismiss the plaintiff's First Amendment claims against Quagliano and Maker.

### 4. Federal Claims Against Quagliano and Maker: Abuse of Process

The plaintiff also asserts Section 1983 claims against Quagliano and Maker for abuse of process. The defendants do not explain the basis for their motion to dismiss the plaintiff's abuse of process claim, except to assert that it is barred by the presence of probable cause for the plaintiff's arrest. As discussed above, the Court finds that the plaintiff has alleged facts that plausibly show that there was no probable cause for his arrest. This cause of action is therefore not dismissed on these grounds. Further, the Court sees no other basis that it should raise *sua sponte* for dismissing this claim. The Court therefore denies the defendants' motion to dismiss the plaintiff's federal abuse of process claim against Quagliano and Maker.

### 5. Federal Claims Against Quagliano and Maker: Deliberate Indifference to Medical Needs

The plaintiff further asserts that Quagliano and Maker are liable under Section 1983 for showing deliberate indifference to his medical needs. Generally, to prevail on a Section 1983 deliberate indifference claim, "[t]he plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference," from his custodian. *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir.2009) (internal quotations omitted). Here, the plaintiff asserts that Quagliano's horse gave him a head wound that was a "serious medical condition," and that Officers Quagliano and Maker were deliberately indifferent to this condition.

First, with respect to Maker, the Court finds that the plaintiff has alleged no facts that show Maker's deliberate indifference to the plaintiff's medical condition. The plaintiff does not allege any facts that describe when Maker arrested him, or what Maker did or failed to do in response to the plaintiff's alleged medical condition. The plaintiff has therefore stated no deliberate indifference claim against Maker.

As for Quagliano, the Court finds that, taking the complaint in the best light for the plaintiff, there is a plausible claim that Quagliano was aware of the plaintiff's medical condition, and was deliberately indifferent to a potentially serious condition. To be sure, the plaintiff alleges few facts describing Quagliano's observation of the plaintiff or his ability to provide medical care for the plaintiff. However, the plaintiff does allege that, after Quagliano's horse stepped on him, he lay unattended and unconscious on the ground, bleeding from the head. Thus, the Court finds it plausible to infer that Quagliano saw that the plaintiff's medical need was urgent, and that Quagliano deliberately ignored that need for an unreasonable period of time.

The defendants do cite to several cases to challenge both (1) whether the plaintiff's

alleged injury was sufficiently serious to state a claim for deliberate indifference, and (2) whether care was sufficiently delayed so as to support that claim. *See Shankle v. Andreone*, No. 06–cv–487, 2009 WL 3111761, *6 (E.D.N.Y. Sept. 25, 2009) (finding at summary judgment that a half-inch head wound would not provide basis for deliberate indifference claim when evidence showed that an ambulance was promptly called); *Basnight v. Rossi*, No. 97–cv–1312, 2003 WL 722810, at *2 (E.D.N.Y. Mar. 4, 2003) (granting summary judgment against a claim of deliberate indifference where plaintiff received treatment, including six stitches, within four hours of his arrest); *LaPierre v. Nassau County*, No. 08–cv–1642, Docket Entry # 94 (E.D.N.Y. Jan. 12, 2010) (adopting report of Magistrate Judge, at Docket Entry # 80, granting a motion to dismiss a deliberate indifference claim after taking notice of evidence that showed that plaintiff's head wound was minor, and that the plaintiff had not lost consciousness prior to being treated).

However, in each of the cases that the defendant relies on, the relevant court examined evidence of the harm suffered by the plaintiff, as well as evidence of how long the defendants waited to call for medical help. Here, at the motion to dismiss stage, the Court has access to no such information. Thus, drawing all appropriate inferences in favor of the plaintiff, the Court finds that the plaintiff has alleged harm and delay sufficient to state a claim for deliberate medical indifference against Quagliano. The Court therefore denies the defendants' motion to dismiss the plaintiff's deliberate indifference claim asserted against Quagliano.

### 6. Federal Claims Against Quagliano and Maker: Failure to Intervene

The plaintiff also asserts against the "defendants" a Section 1983 failure to intervene claim. However, taking the complaint as a whole, the Court finds that the only reasonable construction of the plaintiff's complaint is that it asserts this claim only against the John Doe defendants. To the extent the plaintiff does assert this claim against Quagliano and Maker, the Court finds that there are insufficient facts alleged to state a claim against either of them for failure to intervene, particularly in light of the fact that Quagliano is alleged himself to have used excessive force, and the plaintiff alleges no facts suggesting that Maker observed Quagliano use this force.

### 7. Federal Claims Against Quagliano and Maker: Equal Protection

Finally, the plaintiff asserts against Quagliano and Maker a Fourteenth Amendment equal protection claim. Generally, the equal protection clause of the Fourteenth Amendment guarantees individuals the right not to be treated differently under the law than others who are similarly situated. *See, e.g., Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Here, the plaintiff has asserted no facts that support an equal protection claim, nor has he offered any argument in favor of this claim in his briefing. The Court therefore dismisses the plaintiff's equal protection claim against Quagliano and Maker.

### E. As to the Section 1983 Claims Asserted Against Nassau County

█ The plaintiff also advances against Nassau County all of the Section 1983 claims that the plaintiff asserts against Quagliano and Maker. To prevail on a claim against a municipality pursuant to Section 1983, a plaintiff must satisfy the

well-settled requirements of *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell* and its progeny, a Section 1983 plaintiff must show that a violation of his rights by an employee or agent of a municipality was the result of a "policy or custom" of the municipality. *Id.* at 694, 98 S.Ct. 2018. Conclusory allegations of municipal custom or policy are insufficient to satisfy this requirement. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir.1993) ("The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)); *Cerbelli v. City of New York,* 600 F.Supp.2d 405, 411 (E.D.N.Y.2009) (holding same).

Here, the plaintiff asserts several theories in support of his assertion of *Monell* liability against Nassau County in this case. First, the plaintiff alleges that the defendant Nassau County Police Officers' activities on October 15, 2008 were directed by a policy maker for Nassau County, and thus can be attributed to the County itself. Second, the plaintiff alleges that the defendant police officers' acts demonstrate an accepted custom or practice of violating protestors' civil rights that amounts to a *de facto* Nassau County policy. Third, the plaintiff alleges that the defendant police officers' acts evince Nassau County's failure to train officers to deal properly and legally with protestors. In opposition, the defendants contend that the plaintiff has asserted insufficient facts to support any of these three theories.

■ With respect to the plaintiff's claims for First Amendment violations, excessive force, false arrest, and abuse of process, the Court addresses only the last

of these theories, finding that, at this juncture, it is sufficient to sustain these claims against Nassau County. Generally, a municipality's failure to train employees to properly protect individuals' constitutional rights is a basis for municipal liability under *Monell. Jenkins v. City of New York,* 478 F.3d 76, 94 (2d Cir.2007). Here, the plaintiff alleges that the defendant police officers on horseback—a potentially harmful weapon in a crowd—acted aggressively and dangerously to move a crowd of largely law-abiding protestors onto a sidewalk. The plaintiff also alleges that this act resulted in physical harm to several protestors, and a loss of some of those protestors' ability to exercise their First Amendment rights. Further, the plaintiff alleges that at least one other protestor was arrested despite his compliance with police directives. In the Court's view, these alleged facts are sufficient at this early stage to show that Nassau County failed to train the defendant officers, especially those on horseback near a large crowd, to properly manage a protesting crowd. The Court finds that this plausibly resulted in false arrest, abuse of process, use of excessive force, and violations of First Amendment rights. The Court therefore denies the defendants' motion to dismiss these claims against Nassau County.

■ However, the Court finds that none of the plaintiffs' three theories of municipal liability support claims against Nassau County for deliberate indifference, failure to intervene, or violation of the Fourteenth Amendment equal protection clause. With respect to the plaintiff's deliberate indifference and failure to intervene claims, the plaintiff alleges no facts that show that these violations—to the extent they are in fact alleged against individual defendants—were the result of directives of policy makers. Nor has the

plaintiff alleged facts showing that other individuals were subjected to these alleged violations. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not [alone] sufficient to impose liability under *Monell* ...."). As for the plaintiff's equal protection claim, the Court has found that the plaintiff has alleged no facts to support this claim against the individual defendants, and therefore no derivative equal protection claim may lie against Nassau County. The Court therefore grants the defendants' motion to dismiss the plaintiff's deliberate indifference, failure to intervene, and equal protection claims against Nassau County.

## F. As to the State Law Claims Against the Defendants

The plaintiff asserts numerous state law claims against the defendants. These claims are, namely: (1) violation of his New York State constitutional rights, (2) false arrest and false imprisonment, (3) assault and battery, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) negligence. The plaintiff asserts these causes of action against Quagliano and Maker as direct actors, and against Nassau County under the doctrine of *respondeat superior. See, e.g., Murcia v. County of Orange,* 226 F.Supp.2d 489, 501 (S.D.N.Y.2002) (noting that "there is *respondeat superior* liability for municipalities under State law").

The defendants advance substantive grounds for dismissing only two of these claims: (1) intentional infliction of emotional distress and (2) negligent infliction of emotional distress. With respect to intentional infliction of emotional distress, the defendants assert that this claim must be dismissed because the defendants' alleged conduct is not sufficiently "extreme and outrageous." *See Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 350 (N.Y.1993) (holding that the elements of intentional infliction of emotional distress are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.") With respect to the plaintiff's claims against Quagliano, the Court finds that the plaintiff has alleged sufficient facts to show extreme and outrageous conduct. In the Court's view, Quagliano's alleged aggressive use of his horse to subdue an allegedly lawful protestor is, taken in the best light for the plaintiff, sufficiently exceptional to satisfy the relevant standard. The Court therefore denies the defendants' motion to dismiss the plaintiff's intentional infliction of emotional distress claim as to Quagliano and his employer, Nassau County. However, the Court does grant the plaintiff's motion to dismiss this claim as to Maker, as there are no facts alleged that would support any extreme and outrageous conduct by Maker.

As for the plaintiff's claim for negligent infliction of emotional distress, the defendants contend that they owed no direct duty to the plaintiff, and therefore cannot be liable for this tort. *See Mortise v. United States,* 102 F.3d 693, 696 (2d Cir. 1996) (holding that "a plaintiff has a cause of action for negligent infliction of emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety. The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society.") (internal citations omitted). The plaintiff does not dispute that he has failed to allege the required special duty that forms the basis for this tort, and the Court

agrees that the plaintiff has plead no facts supporting such a duty. The Court therefore dismisses the plaintiff's claim for negligent infliction of emotional distress as to all the defendants.

The defendants provide only procedural reasons to dismiss the remaining state law claims. With respect to the plaintiff's claims for (1) false arrest and false imprisonment, (2) assault and battery, and (3) negligence, the defendant only urges the Court not to exercise supplementary jurisdiction over these claims. As the Court has found that the plaintiff has stated a claim for several directly related federal causes of action, the Court elects to exercise its supplemental jurisdiction over these state law claims, and denies the plaintiff's motion to dismiss these causes of action.

Finally, the defendants assert that the plaintiff's causes of action for violation of the New York State Constitution should be dismissed as duplicative of his causes of action pursuant to the Federal Constitution. While it is true that New York State Constitutional law is often directly influenced by analogous Federal Constitutional law, the bodies of law are not identical. *See, e.g., People ex rel. Arcara v. Cloud Books, Inc.,* 68 N.Y.2d 553, 557–58, 510 N.Y.S.2d 844, 503 N.E.2d 492 (N.Y.1986) (holding that New York State Constitutional guarantees of free speech are influenced by, but generally larger than, the First Amendment free speech guarantee). Thus, the Court declines to dismiss the plaintiff's state constitutional law claims as duplicative. However, the Court does dismiss the plaintiff's state constitutional law claim for equal protection, as it is, like the plaintiff's analogous federal claim, unsupported by any alleged facts. *See Coakley v. Jaffe,* 49 F.Supp.2d 615, 628 (S.D.N.Y. 1999) ("the New York State Constitution's guarantees of equal protection and due process are virtually coextensive with those of the U.S. Constitution").

## G. As to the Plaintiff's Request for Equitable Relief

■ The plaintiff seeks both monetary and equitable compensation for his alleged harms. The defendants do not challenge the plaintiff's standing to request monetary relief in this case, but they do challenge the plaintiff's standing to seek the equitable relief he requests.

The plaintiff seeks equitable relief that, generally, would change the way that Nassau County uses mounted officers for crowd control. Specifically, the plaintiff seeks:

> a declaratory judgment that the use of horses by NCPD police officers against demonstrators as a means of crowd control when no emergency or exigent circumstances exist is unconstitutional as a matter of law; [and]

> an order requiring the NCPD to institute training of its Mounted Unit as to the proper constitutional standard for the use of the NCPD Mounted Unit horses as a means of crowd control and to implement such standards in the operations of the NCPD Mounted Unit.

(Compl., ¶ 122(b)-(c).)

■ To have standing to obtain injunctive and related declaratory relief from the government, a plaintiff "must show a likelihood that he will be injured in the future" by the conduct he seeks to enjoin. *Shain v. Ellison,* 356 F.3d 211, 215 (2d Cir.N.Y. 2004) (quoting *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998)) (internal quotations and alterations omitted); *see also O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (holding that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunc-

tive relief ... if unaccompanied by any continuing, present adverse effects"). Further, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Shain*, 356 F.3d at 215 (quoting *O'Shea*, 414 U.S. at 494, 94 S.Ct. 669 (internal quotations omitted)).

Here, the plaintiff is a West Virginia resident who does not assert that he regularly spends any time in Nassau County, and who is thus unlikely to be affected in the future by Nassau County's use of mounted police officers. Nevertheless, the plaintiff asserts in his briefing—although not in the complaint—that "if there are future Iraq Veterans Against the War events in Nassau County, he may travel to participate in them." (Pl.'s Opp. to Mot. to Dismiss at 24.) The plaintiff further asserts that he is fearful of attending any such events because of Nassau County's alleged improper use of mounted officers to control crowds. Based on these assertions, the plaintiff maintains that he faces real and immediate harm from Nassau County's policies regarding the use of mounted officers. The plaintiff therefore contends that he has standing to seek the injunctive relief he requests.

The Court finds that the plaintiff's alleged future harm is insufficiently imminent to grant him standing to seek injunctive relief. Even had the plaintiff included the described allegations in his complaint, his claim that "*if* there are future Iraq Veterans Against the War events in Nassau County, [the plaintiff] *may* travel to participate in them" (id. (emphasis added)) is precisely the kind of hypothetical harm that is insufficient to confer standing on a plaintiff. Therefore, the Court grants the defendants' motion to dismiss the plaintiff's request for the injunctive and declaratory relief related to the Nassau County Police Department's use of mounted police officers, as set forth above.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion to dismiss all claims against Nassau County Commissioner of Police Lawrence W. Mulvey is granted; and it is further

**ORDERED** that the defendants' motion to dismiss all claims against Nassau County Police Lieutenant Nicholas Pandolfo is granted; and it is further

**ORDERED** that the defendants' motion to dismiss all claims against the unnamed John Doe defendants is denied without prejudice; and it is further

**ORDERED** that the defendants' motion to dismiss Section 1983 claims against Officer Michael Quagliano for (1) false arrest, (2) excessive force, (3) First Amendment violations, (4) abuse of process, and (5) deliberate indifference to medical needs is denied; and it is further

**ORDERED** that the defendants' motion to dismiss Section 1983 claims against Officer Michael Quagliano for (1) violation of the equal protection clause of the Fourteenth Amendment, and (2) and failure to intervene is granted; and it is further

**ORDERED** that the defendants' motion to dismiss Section 1983 claims against Officer Christopher P. Maker for (1) false arrest, (2) First Amendment violations, and (3) abuse of process is denied; and it is further

**ORDERED** that the defendants' motion to dismiss Section 1983 claims against Officer Christopher P. Maker for (1) excessive force, (2) deliberate indifference to medical needs, (3) violation of the equal protection clause of the Fourteenth Amendment, (4) and failure to intervene is granted;

**ORDERED** that the defendants' motion to dismiss Section 1983 claims against Nassau County for (1) false arrest, (2) excessive force, (3) First Amendment violations, and (4) abuse of process is denied; and it is further

ORDERED that the defendants' motion to dismiss Section 1983 claims against Nassau County for (1) violation of the equal protection clause of the Fourteenth Amendment, (2) failure to intervene, and (3) deliberate indifference to medical needs is granted; and it is further

ORDERED that the defendants' motion to dismiss the state common law claim for intentional infliction of emotional distress as to Quagliano and Nassau County is denied; and it is further

ORDERED that the defendants' motion to dismiss the state common law claim for intentional infliction of emotional distress as to Maker is granted; and it is further

ORDERED that the defendants' motion to dismiss the state common law claim for negligent infliction of emotional distress as to all defendants is granted; and it is further

ORDERED that the defendants' motion to dismiss the state common law claims for (1) false arrest and false imprisonment, (2) assault and battery, and (3) negligence as to all defendants is denied; and it is further

ORDERED that the defendants' motion to dismiss the claim for violation of the New York State Constitution as to all defendants is denied; and it is further

ORDERED that the defendants' motion to dismiss the request for injunctive and declaratory relief related to the constitutionality and future use of mounted police units, as described above, is granted; and it is further

ORDERED that the Clerk of the Court is directed to amend the caption of this case to read:

SO ORDERED.