Po K. LIN, Plaintiff,

v.

COUNTY OF MONROE, Patrick O'Flynn, Sheriff, Monroe County Sheriff's Department, Deputies Joedy Luther, Michael Thompson, and Robert Murphy, in their Official and Individual Capacities, Defendants.

No. 10–CV–6474 EAW.

United States District Court, W.D. New York.

Signed Dec. 8, 2014.

Po K. Lin, West Henrietta, NY, pro se.

Adam M. Clark, Monroe County Department of Law, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

Plaintiff Po K. Lin ("Plaintiff") brings this action against the County of Monroe, Sheriff Patrick O'Flynn, the Monroe County Sheriffs Department, and Deputies Joedy Luther,[1] Michael Thompson, and Rob-

---

**1.** Plaintiff's complaint names "Joey Luther" as a Defendant. Defendants' answer indi-

cates that Mr. Luther's first name is "Joedy." (Dkt. 8). Therefore, the Court *sua sponte*

ert Murphy ("Defendants"), in their official and individual capacities, alleging violations of 42 U.S.C. § 1983, for Defendants' alleged use of excessive force against him. (Dkt. 1).

On December 22, 2009, Plaintiff set out on an errand for his girlfriend to purchase a Burger King chicken sandwich, but his trip did not end well. Plaintiff was ultimately arrested, and the derailed Burger King trip has led the parties into federal court. Currently before the Court is Defendants' motion for summary judgment. (Dkt. 23). Because there are some disputed issues of material fact requiring a trial of Plaintiff's claims, Defendants' motion is granted in part and denied in part. Specifically, Defendants' motion is granted as to all causes of action except for his excessive use of force, assault, and battery claims against Deputy Luther in his individual capacity.

## FACTUAL BACKGROUND

On December 22, 2009, Plaintiff went to a Burger King restaurant located at 3679 W. Henrietta Road, located in Henrietta, New York, to purchase a chicken sandwich for his girlfriend, Jessica Appleton. (Dkt. 23–1 at ¶¶ 1, 3; Dkt. 27–1 at ¶¶ 1, 3). Plaintiff was operating a 1995 Acura Integra, which was registered to Ms. Appleton. (Dkt. 23–1 at ¶ 2; Dkt. 27–1 at ¶ 2).

Plaintiff drove the Integra to the drive-through window and placed his order with a Burger King employee, Keith Dunniehigh. (Dkt. 23–1 at ¶ 4; Dkt. 27–1 at ¶ 4). Mr. Dunniehigh observed that the steering wheel column cover of the Integra had been removed, and the wires on the column were exposed. (Id.). Dunniehigh became suspicious that the Integra was stolen and called 911 to report a possible stolen vehicle. (Id). The 911 operator

asked Dunniehigh to attempt to hold the vehicle until deputies arrived. (Dkt. 23–1 at ¶ 7; Dkt. 27–1 at ¶ 7). Dunniehigh asked Plaintiff to pull forward and park his vehicle while he waited for his food. (Id.). Plaintiff complied and parked his vehicle. (Id.).

Monroe County Sheriff's deputies Joedy Luther and Vincent Re responded to the Burger King to investigate. (Dkt. 23–1 at ¶ 8; Dkt. 27–1 at ¶ 8). Re was the field training officer for Luther, who had completed his Police Academy training in September 2009. (Dkt. 23–1 at ¶ 9; Dkt. 27–1 at ¶ 9). Plaintiff saw the sheriff vehicle pull up and observed a uniformed deputy exit the vehicle. (Dkt. 23–1 at ¶ 10; Dkt. 27–1 at ¶ 10). The deputy approached Plaintiff's car and spoke to him through the driver's side window. (Id.). When the deputy approached, Plaintiff asked, "how can I help you officer?" (Id.). The deputy asked Plaintiff on four occasions to exit the vehicle. Each time the deputy asked Plaintiff to exit the vehicle, Plaintiff responded, "why," and refused to exit the vehicle. (Dkt. 23–1 at ¶ 11; Dkt. 27–1 at ¶ 11).

At this point, the accounts of Plaintiff and Defendants begin to differ. Defendants contend that the deputy who approached the vehicle and spoke to Plaintiff through the drivers' side window was Joedy Luther, while Plaintiff contends he was first approached by Deputy Re. (Dkt. 23–3 at ¶ 6; Dkt. 29 at ¶ 5). In his amended declaration, Plaintiff contends that Deputy Re told Plaintiff to place his hands on the steering wheel, and that Plaintiff at all times complied with this request. (Dkt. 29 at ¶¶ 6–7). However, in his deposition and at his hearing conducted pursuant to New York General Municipal Law § 50–h, Plaintiff testified that he did remove his

amends the caption to reflect Mr. Luther's correct name.

hands from the steering wheel on one occasion. (Dkt. 23–10 at 73:9–21; Dkt. 23–16 at 16:17–24). Deputy Luther contends that Plaintiff refused to comply with his request, and removed his right hand from the wheel and placed it between the seat and the console. (Dkt. 23–3 at ¶ 7). Luther also contends that Plaintiff refused to place his hands back on the steering wheel, and that he did not know if Plaintiff was reaching for a weapon. (Id.).

After Plaintiff refused to exit the vehicle, a second deputy approached Plaintiff and punched him in the left cheek. (Dkt. 23–1 at ¶ 13; Dkt. 27–1 at ¶ 13).[2] While Defendants contend that Deputy Luther was not the deputy who struck Plaintiff in the face (Dkt. 23–3 at ¶ 13), Plaintiff contends that he was struck by Deputy Luther (Dkt. 29 at ¶ 10). The parties agree that the deputy who struck Plaintiff in the face was taller than the deputy who spoke to Plaintiff through the window, and was what Plaintiff described as a "training deputy." (Dkt. 23–1 at ¶ 16; Dkt. 27–1 at ¶ 16).

After Plaintiff was struck, the training deputy reached into the vehicle, unlocked the door, and used the exterior door handle to open the driver's side door. (Dkt. 23–1 at ¶ 18; Dkt. 27–1 at ¶ 18). Both deputies forcibly removed Plaintiff from the vehicle, put his hands behind his back, threw him to the ground, and handcuffed him. (Dkt. 23–1 at ¶ 19; Dkt. 27–1 at ¶ 19). Defendants contend that Plaintiff resisted their efforts to remove him from the vehicle (Dkt. 23–3 at ¶ 8), while Plaintiff contends that he voluntarily exited the car (Dkt. 29 at ¶ 11). Plaintiff contends that both deputies "slammed" him to the ground after dragging him out of the car.

(Id. at ¶ 12). Plaintiff further contends that the standing deputy asked Plaintiff, "do you know what you just did . . . you just swung at two officer deputies!" (Id. at ¶ 13). Plaintiff denied swinging at the deputies. (Id.). Mr. Dunniehigh described Plaintiff as "resisting" arrest. (Dkt. 23–11 at 32:12–16, 33:8–10).

While Plaintiff was being handcuffed, one of the deputies had his knee on Plaintiff's back. (Dkt. 23–1 at ¶ 19; Dkt. 27–1 at ¶ 19). Specifically, Plaintiff contends that the standing deputy placed his knee strongly and firmly on Plaintiff's face, "with such force it felt as though [Plaintiff's] skull was being crushed." (Dkt. 29 at ¶ 14). Defendants contend that Deputy Luther handcuffed Plaintiff (Dkt. 23–3 at ¶ 8), while Plaintiff contends that Deputy Re handcuffed him (Dkt. 29 at ¶ 15). In his deposition, Plaintiff testified that he did not know which deputy put handcuffs on him, or which deputy had his knee on Plaintiff's head. (Dkt. 23–10 at 85:8–13).

Defendants contend that after Plaintiff was handcuffed, the training deputy stood him up and walked him to the patrol vehicle. (Dkt. 23–1 at ¶ 21; Dkt. 23–16 at 27:2–4). During his examination pursuant to New York General Municipal Law § 50–h, Plaintiff testified that it was the "more senior officer" or the "training officer" who took him to the back of the police car. (Dkt. 23–16 at 26:17–25, 27:2–4). However, in his amended declaration, Plaintiff contends that it was Deputy Luther who "sprawled [him] out over the side of the trunk of the squad car" and demanded that he "stop resisting arrest." (Dkt. 29 at ¶ 17).

The parties agree that the training deputy was the deputy who twisted Plaintiff's

---

**2.** Defendants contend that no excessive force was used on Plaintiff at the time of his arrest and deny his claim that any assault or battery occurred; only for the purpose of the instant motion, they rely on the facts as alleged by Plaintiff. (Dkt. 23–2 at ¶ 11; Dkt. 23–1 at ¶ 13).

wrists. (Dkt. 23–1 at ¶ 16; Dkt. 27–1 at ¶ 16). Despite this agreement, in his amended declaration, Plaintiff contends that Deputy Luther twisted his wrists "as hard as [his] wrists could physically allow him to turn," while Plaintiff pleaded with Deputy Luther to stop. (Dkt. 29 at ¶ 17). Plaintiff further contends that Deputy Luther told Plaintiff to "shut up," and that he struck the back of Plaintiff's left thigh with his knee several times. (*Id*).

After Plaintiff was in the patrol car, Sergeant Robert Murphy arrived at the scene of the arrest and inquired about what had occurred. (Dkt. 23–1 at ¶ 22; Dkt. 27–1 at ¶ 22). Murphy was not present at the scene when Plaintiff was struck or removed from his vehicle and handcuffed. (*Id.*). Plaintiff told the other deputies who had arrived on the scene that Deputy Luther had punched him in the face. (Dkt. 29 at ¶ 18). Plaintiff contends that Deputy Luther denied the accusation and called Plaintiff a "liar." (*Id.*).

The parties agree that, despite being named as a defendant, there was no individual named Michael Thompson who was employed by the Monroe County Sheriffs Department at the scene of the incident. (Dkt. 23–1 at ¶ 23; Dkt. 27–1 at ¶ 23).

While Plaintiff was in the patrol car, he answered Deputy Re's questions, including identifying the owner of the vehicle. (Dkt. 29 at ¶ 20). Plaintiff reported that the car belonged to his girlfriend, Jessica Appleton. (*Id.*). Deputy Re called Ms. Appleton and asked if Plaintiff was permitted to operate the vehicle. (*Id.*).

Following his arrest, Plaintiff was transported to the Monroe County Sheriff's substation at the Marketplace Mall in Henrietta, New York. (Dkt. 23–1 at ¶ 24;

Dkt. 27–1 at ¶ 24). Plaintiff was photographed, charged with obstructing government administration and resisting arrest, and returned to his vehicle upon his release. (*Id.*). The Sheriff's Department offered to call an ambulance for Plaintiff, but he refused medical treatment. (Dkt. 23–1 at ¶ 25; Dkt. 27–1 at ¶ 25).

That night, Plaintiff's neighbor drove him to Strong Memorial Hospital for medical evaluation of the injuries he allegedly sustained during his arrest. (Dkt. 29 at ¶ 23). Ms. Appleton also contacted the local 911 dispatcher and requested that a police officer meet Plaintiff at the hospital so that Plaintiff could make a formal police report against deputies Re and Luther. (*Id.* at ¶ 24). While waiting for a police officer to arrive, Plaintiff received a call from Sergeant Murphy, who instructed Plaintiff to stop communicating with him. (*Id.* at ¶ 25). Lieutenant Wagner subsequently arrived at the hospital and told Plaintiff that the sheriff's department had acted properly, and that the deputies' actions would be internally investigated. (*Id.* at ¶ 26). Lieutenant Wagner refused to take a formal police report from Plaintiff in light of the already-pending internal investigation. (*Id.*).

Plaintiff alleges he sustained a fractured right wrist, a sprained left wrist, and a bruised left thigh, as a result of the incident. (Dkt. 23–1 at ¶ 26; Dkt. 27–1 at ¶ 26). On April 7, 2010, Henrietta Town Court Judge Steven M. Donsky adjourned the charges against Plaintiff in contemplation of dismissal upon Plaintiff's agreement to complete four hours of community service and to avoid arrest for six months. (Dkt. 23–1 at ¶ 28; Dkt. 27–1 at ¶ 28).[3] The Monroe County Sheriffs Office conducted an internal investigation into the

3. The parties' statements of fact state that the charges were adjourned in contemplation of dismissal on April 7, 2000. (Dkt. 23–1 at ¶ 28; Dkt. 27–1 at ¶ 28). However, the charges were actually adjourned on April 7, 2010. (*See* Dkt. 23–18 at 2).

incident and found that deputies Luther and Re did not violate any policies or procedures. (Dkt. 23–1 at ¶ 29; Dkt. 27–1 at ¶ 29).

## PROCEDURAL HISTORY

Plaintiff filed his complaint on August 20, 2010, alleging violations of 42 U.S.C. § 1983, pursuant to the Fourth and Fourteenth Amendments for excessive use of force by the deputies, supervisory liability against Sheriff Patrick O'Flynn, *Monell* liability against the County of Monroe, and assault and battery against the deputies. (Dkt. 1). Plaintiff also seeks punitive damages against the deputies. (*Id.*). Plaintiff was represented by Christina A. Agola, PLLC, at the time he filed his complaint. (*Id.*).

Defendants filed their answer on January 27, 2011. (Dkt. 8). On April 12, 2013, Defendants filed the instant motion for summary judgment. (Dkt. 23). Plaintiff filed a response on July 11, 2013, and Defendants replied on August 12, 2013. (Dkt. 27 and 30). On November 21, 2013, the Honorable William M. Skretny, Chief Judge, United States District Court for the Western District of New York, granted Christina A. Agola's motion to withdraw as Plaintiff's attorney in light of her suspension. (Dkt. 31). On February 21, 2014, the case was transferred to the undersigned for all further proceedings. (Dkt. 32).

## DISCUSSION

### I. Legal Standard on a Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

### II. Plaintiff's *Monell* Claim Against Monroe County and the Monroe County Sheriffs Department

Plaintiff's third cause of action is against the County of Monroe, for maintaining a custom, policy, or practice of condoning, facilitating, or promoting the use of excessive force by its deputies. (Dkt. 1 at ¶¶ 76–79). Similarly, Plaintiff names the Monroe County Sheriff's Department as a defendant to this case, alleging that it "had a custom, policy, or pattern and practice of subjecting persons to excessive force by rookie deputies," and "of failing to adequately train, supervise, or discipline officers concerning basic use of force techniques and basic arrest techniques." (*Id.* at ¶¶ 57, 60).

■■ "Municipalities are not subject to § 1983 liability on the basis of a *respondeat superior* theory." *Burgos v. Grenier*, No. 13–CV–6533–FPG, 2014 WL 3749651, at *2, 2014 U.S. Dist. LEXIS 103477, at *6 (W.D.N.Y. July 29, 2014). In order to maintain a 42 U.S.C. § 1983 action against a municipal defendant, a plaintiff must identify a municipal policy or custom from which the alleged injury arose. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.2006) (emphasis in original). In order to prevail on a *Monell* claim against a municipality, the plaintiff must establish the underlying constitutional violation as well as a municipal policy or custom. *Sethi v. Nassau Cnty.*, No. 11–CV–6380 (SJF)(GRB), 2014 WL 2526620, at *6, 2014 U.S. Dist. LEXIS 77069, at *21 (E.D.N.Y. June 3, 2014).

■ Courts in the Second Circuit apply a two-prong test for § 1983 claims brought against a municipality:

> First, the plaintiff must prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries *beyond merely employing* the misbehaving officer. Second, the plaintiff must establish a direct causal link between [the] municipal policy or custom and the alleged constitutional violation.

*Cuellar v. Love*, No. 11–cv–3632 (NSR), 2014 WL 1486458, at *9, 2014 U.S. Dist. LEXIS 51622, at *27–28 (S.D.N.Y. Apr. 11, 2014) (internal quotations and citations omitted) (emphasis and alterations in original).

Defendants submit that Plaintiff has failed to establish *Monell* liability against Monroe County because the County is not responsible for developing and implementing the policies, procedures, and regulations pertaining to the conduct of its sheriff's deputies. (Dkt. 23–5 at 16–17). Instead, Sheriff O'Flynn is responsible for developing the policies that govern his deputies, and he is not a Monroe County policymaker. (*Id.* at 17). Therefore, the Defendants argue that even though Sheriff O'Flynn did not establish any policy that violated Plaintiff's constitutional rights, the County would be immune from liability even if he had. (*Id.*).

■■ The law in the Second Circuit is clear that "isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir.2012), *cert. denied*, —— U.S. ——, 134 S.Ct. 125, 187 L.Ed.2d 255 (2013). However, "when the sheriff or his deputies are acting as final policymakers or pursuant to County policy or custom, the County may be held liable for their actions." *Harford v. Cnty. of Broome*, No. 99–CV–0482, 1999 WL 615190, at *5, 1999 U.S. Dist. LEXIS 12532, at *17 (N.D.N.Y. July 15, 1999).

■ Plaintiff offers no evidence beyond the allegations in his complaint that the County of Monroe had a custom, policy, or practice of condoning, facilitating, or promoting the use of excessive force by deputies. To the contrary, it appears that an internal investigation was conducted as to whether Deputies Re and Luther violated any internal policies and procedures during their arrest of Plaintiff. (*See* Dkt. 23–3 at ¶ 15). Plaintiff does not offer evidence of prior instances of deputy miscon-

**352**

duct that were unaddressed, facilitated, or encouraged by Monroe County, or that Monroe County somehow encouraged misconduct by its deputies. Plaintiff does allege one instance in his complaint in an effort to demonstrate a municipal policy or custom:

> in 2007, it was determined that rookie Monroe County Deputy Surowy did not have *reasonable suspicion* to detain forcibly or *probable cause* to arrest five people, that Deputy Surowy immediately elevated the intrusion to a level three detention without the slightest basis for doing so, and in the process also violated the prohibition announced in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), by entering a residence without consent or any exigent circumstances being present for the purpose of detaining parties who at that time could not reasonably have been considered even a suspect, much less a perpetrator of any crime.

(Dkt. 1 at ¶ 58) (emphasis in original).

It is well-settled that "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, does not suffice to show a municipal policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)); *see also Giaccio v. City of New York,* 308 Fed.Appx. 470, 472 (2d Cir.2009) (affirming summary judgment in favor of defendants dismissing *Monell* claim where plaintiff identified only four examples of constitutional violations, because such evidence "falls far short of establishing a practice that is so 'persistent and widespread' to justify the imposition of municipal liability."). To establish liability under *Monell,* a plaintiff must demonstrate that the conduct of the deputies was "so persistent and widespread as to practically have the force of law." *Connick v.*

*Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). Even taking the one alleged incident involving Deputy Surowy as true, Plaintiff cannot demonstrate a municipal policy or custom.

Furthermore, Plaintiff's allegation regarding Deputy Surowy has not been substantiated by discovery. *See Southerland v. Garcia,* 483 Fed.Appx. 606, 609 (2d Cir. 2012) ("summary judgment was proper on the remaining claims against the City. Plaintiffs have failed to allege, let alone present any evidence of, an official custom or policy such as is necessary to establishing liability under Monell...."); *Jackson v. Cnty. of Nassau,* No. 07–CV–245 (JFB)(AKT), 2010 WL 1849262, at *11, 2010 U.S. Dist. LEXIS 44344, at *35–36 (E.D.N.Y. May 6, 2010) (granting summary judgment in favor of county on plaintiff's *Monell* claim, because the "mere assertion that a municipality has such a policy is insufficient to establish *Monell* liability," and "in any case Plaintiff may not overcome summary judgment by relying merely on allegations or denials in its own pleading.") (quoting *Manganiello v. City of New York,* No. 07 Civ. 3644(HB), 2008 WL 2358922, at *9–10, 2008 U.S. Dist. LEXIS 44765, at *29–30 (S.D.N.Y. June 10, 2008)). In short, Plaintiff has failed to demonstrate any factual basis for imputing the alleged unconstitutional conduct of the deputies onto Monroe County. Because there are no disputed issues of material fact concerning Plaintiff's *Monell* claim, Monroe County is entitled to summary judgment.

Like Plaintiff's allegations against Monroe County, there is no evidence that the Sheriff's Department created or maintained any custom, policy, or pattern and practice of subjecting arrestees to excessive force or that they failed to adequately train, supervise, or discipline deputies. To the contrary, Plaintiff testified that he had

been stopped by Monroe County Sheriff's Department deputies for traffic violations on several other occasions, and that he had no complaints about how the deputies treated him during those traffic stops. (Dkt. 23–10 at 18:23–25, 19:2–6, 21:4–7, 46:9–11, 47:4–6). Accordingly, the Monroe County Sheriff's Department is also entitled to summary judgment.[4]

### III. Plaintiffs Claims Against the Defendants in Their Official Capacities

 Plaintiff sues Sheriff O'Flynn, Deputy Luther, Deputy Thompson, and Sergeant Murphy in their official and individual capacities. (Dkt. 1). Defendants argue that the real party in interest in an official capacity suit is the governmental entity and not the named official. (Dkt. 23–5 at 9–10). Plaintiff does not contest this assertion.

 "[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir.2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)); *see also 5 Borough Pawn, LLC v. City of New York*, 640 F.Supp.2d 268, 297 (S.D.N.Y.2009) (dismissing plaintiff's claim against defendant in his official capacity as duplicative of plaintiff's claim against the city). Accordingly, Plaintiff's claims against Sheriff O'Flynn, Deputies Luther and Thompson,

and Sergeant Murphy in their official capacities are dismissed.

### IV. Plaintiff's 42 U.S.C. § 1983 Supervisory Liability Claim Against Sheriff Patrick O'Flynn

Plaintiff's second cause of action is for supervisory liability against Monroe County Sheriff Patrick O'Flynn, for his alleged failure to provide deputies with proper training, supervision, or discipline. (Dkt. 1 at ¶¶ 71–75). Defendants argue that Plaintiff's supervisory claim against Sheriff O'Flynn must be dismissed because there is no evidence that Sheriff O'Flynn failed to adequately supervise his deputies. (Dkt. 23–5 at 13–14).

 It is well-settled that a supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir.2006). "A 'plaintiff cannot base liability solely on [the defendant]'s supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F.Supp.2d 268, 276 (W.D.N.Y.2003) (quoting *Burgess v. Morse*, 259 F.Supp.2d 240, 248 (W.D.N.Y. 2003)) (alteration in original). Personal involvement by a supervisory official may be established by evidence of the official's direct participation in the alleged constitutional deprivation, or by evidence of the following by the supervisory official:

---

**4.** The Monroe County Sheriff's Department also must be dismissed because a department is "merely an administrative arm of the County, and it therefore lacks the capacity to be sued." *Colpoys v. Cnty. of Erie*, No. 12–CV–908S, 2013 WL 5437635, at *3, 2013 U.S. Dist. LEXIS 139653, at *6–7 (W.D.N.Y. Sept. 27, 2013) (dismissing plaintiff's claims against the Erie County Sheriffs Department); *see also McKenzie v. Cnty. of Erie*, No. 12–CV–912S, 2013 WL 5348084, at *1–2, 2013 U.S.

Dist. LEXIS 135967, at *5–6 (W.D.N.Y. Sept. 23, 2013) (dismissing claims against various Erie County Departments); *Tulloch v. Erie Cnty. Holding Ctr.*, No. 10–CV–0207S, 2010 WL 2609054, at *2, 2010 U.S. Dist. LEXIS 64349, at *5 (W.D.N.Y. June 24, 2010) (dismissing claims against the Erie County Holding Center because it is "merely an arm of the County, and does not have a legal identity separate and apart from the County and thus cannot be sued....").

(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

*Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir.2003) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir.2001) and *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).[5] "In other words, the conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983." *Roberites v. Huff*, No. 11–CV–521SC, 2012 WL 1113479, at *6, 2012 U.S. Dist. LEXIS 46206, at *21 (W.D.N.Y. Mar. 30, 2012).

A plaintiff's claim for supervisory liability will be dismissed where he fails to come forward with evidence of personal involvement by a supervisory official. *See Sash v. United States*, 674 F.Supp.2d 531, 545–46 (S.D.N.Y.2009) (summary judgment appropriate on supervisory liability claims where no evidence existed that the officers in question lacked training or that the alleged lack of training led to the alleged constitutional violation, or that the supervisory defendants were responsible for the creation and maintenance of a policy that may have caused or prevented the alleged use of force by officers); *Faulk v. New York City Dep't of Corr.*, No. 08 Civ.

01668(LGS), 2014 WL 239708, at *10, 2014 U.S. Dist. LEXIS 7804, at *26 (S.D.N.Y. Jan. 21, 2014) (granting summary judgment in favor of defendant where "the evidence in the record [was] ... insufficient for a reasonable jury to find that Plaintiff has established that Warden Shaw was personally involved in any constitutional violations against Plaintiff."); *Ryan v. Moss*, No. 11–CV–6015P, 2013 WL 956722, at *17, 2013 U.S. Dist. LEXIS 34191, at *54–55 (W.D.N.Y. Mar.12, 2013) (granting summary judgment in favor of defendant on supervisory liability claim where, "[a]t best, [the plaintiff] offer[ed] conclusory allegations concerning [the supervisory official's] purported failure to adequately train or supervise his subordinates regarding the use of excessive force," because "[s]uch allegations, without facts to suggest that [the supervisory official's] failure to train or supervise his subordinates was his deliberate choice or that he was aware of a specific deficiency in the training program, may not establish a basis for individual liability against [the supervisory official.]").

■ In this case, Plaintiff alleges that Sheriff O'Flynn "was personally involved in the deprivation of Plaintiff's constitutional rights as he acted with gross negligence, recklessness, and/or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the defendant deputies. ..." (Dkt. 1 at ¶ 73). However, the record is devoid of any facts supporting the allegation that Sheriff O'Flynn was personally involved in the

**5.** The Court is cognizant that "[t]here has been considerable division among the district courts of the Second Circuit as to whether [*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)] abrogates several factors of the Colon test and if so to what extent." *James v. Orange Cnty. Corr. Facility*,

No. 09 Civ. 7226(CM), 2011 WL 5834855, at *4, 2011 U.S. Dist. LEXIS 134560, at *11 (S.D.N.Y. Nov. 18, 2011). Here, Plaintiff has failed to present evidence satisfying any of the *Colon* factors; therefore, any disagreement among district courts in the Second Circuit is irrelevant to the Court's analysis.

alleged constitutional deprivations against Plaintiff. In essence, Plaintiff appears to rely solely on Sheriff O'Flynn's position "[a]t the top of the chain of command" (Dkt. 27 at 8), to support his claims of supervisory liability. This is insufficient. Because there are no disputed issues of material fact as to Plaintiff's supervisory allegations against Sheriff O'Flynn, summary judgment is mandated in favor of Sheriff O'Flynn.

## V. Plaintiffs Claims Against Deputy Michael Thompson and Sergeant Robert Murphy

In his complaint, Plaintiff contends that Deputy Thompson and Sergeant Murphy used excessive force against him, and assaulted and battered him. (Dkt. 1 at ¶¶ 65–70, 80–86). In their motion for summary judgment, Defendants note that there was no individual named Michael Thompson employed by the Monroe County Sheriffs Department at the scene of the incident, and that Sergeant Murphy was not present at the scene during the alleged use of excessive force against Plaintiff. (Dkt. 23–5 at 5; *see also* Dkt. 23–3 at ¶¶ 9–10 and Dkt. 23–4 at ¶¶ 4, 6).

As discussed in Part IV of this Decision and Order, a defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983. Because Plaintiff is unable to produce any evidence that Sergeant Murphy or an individual named Michael Thompson was personally involved in the alleged excessive use of force and/or assault and battery against him, they are entitled to summary judgment.

### A. Plaintiff's Claims Against Deputy Thompson

It is undisputed that "[t]here was no individual named Michael Thompson who was employed by the Monroe County Sheriff's Office at the scene of this incident." (Dkt. 23–1 at ¶ 23; Dkt. 27–1 at ¶ 23). As a result, Plaintiff's claims against Michael Thompson are dismissed.

### B. Plaintiff's Claims Against Sergeant Murphy

It is undisputed that Sergeant Murphy "was not present at the scene when Lin was struck in the face or removed from the vehicle and handcuffed." (Dkt. 23–1 at ¶ 22; Dkt. 27–1 at ¶ 22). Because Sergeant Murphy was not present at the scene, as admitted by Plaintiff, and there is no evidence in the record supporting Plaintiff's claims as to Sergeant Murphy, he is entitled to summary judgment in his favor. *See Mikulec v. Town of Cheektowaga*, 909 F.Supp.2d 214, 222 (W.D.N.Y.2012) (granting summary judgment to officers where plaintiff established their presence at the scene, but could not establish that they "witnessed the alleged abuse or had an opportunity to stop it."); *Munoz v. City of New York*, No. 04 Civ. 1105(JGK), 2008 WL 464236, at *2, 2008 U.S. Dist. LEXIS 12305, at *12–14 (S.D.N.Y. Feb. 20, 2008) (officer who was "waiting around at the apartment in case he was needed" but did not physically contact plaintiff, was not personally involved).

## VI. Plaintiff's Excessive Use of Force and Assault and Battery Claims

Plaintiff's first cause of action is for violation of 42 U.S.C. § 1983 pursuant to the Fourth and Fourteenth Amendments, for excessive use of force. (Dkt. 1 at ¶¶ 65–70). Plaintiff's fourth cause of action is for assault and battery. (*Id.* at ¶¶ 80–86). Defendants argue that they are entitled to summary judgment on these claims because any use of force by the deputies was privileged and not excessive

under the circumstances.[6] (Dkt. 23–5 at 8–9, 10–12). In the alternative, Defendants argue that the deputies are entitled to qualified immunity for their actions. (*Id.* at 11–12).

■ "As against law enforcement personnel, assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest." *Tianshu Li v. United States,* No. 05 Civ. 6237(NRB), 2009 WL 3321014, at *1 n. 2, 2009 U.S. Dist. LEXIS 96945, at *4–5 n. 2 (S.D.N.Y. Oct. 8, 2009) (citing *Posr v. Doherty,* 944 F.2d 91, 94–95 (2d Cir.1991)); *Cabral v. City of New York,* No. 12 Civ. 4659(LGS), 2014 WL 4636433, at *10, 2014 U.S. Dist. LEXIS 131342, at *28 (S.D.N.Y. Sept. 7, 2014) ("[E]xcept for § 1983's requirement that the tort be committed under color of state law, the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same.") (internal quotations and citation omitted) (alteration in original). "Both require [the plaintiff] to show that the officers' use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *See Hershey v. Goldstein,* 938 F.Supp.2d 491, 519 (S.D.N.Y.2013) (internal quotations and citations omitted). Because the same standard is applied to excessive use of force and assault and battery claims, the Court will address these claims together. *See id.* (addressing plaintiff's claim for excessive use of force and state law claims for assault and battery together); *Brown v. City of Syracuse,* No. 5:11–CV–668

(FJS/ATB), 2013 WL 1294085, at *2, 2013 U.S. Dist. LEXIS 44296, at *6–7 (N.D.N.Y. Mar. 28, 2013) (same).

## A. Standard for 42 U.S.C. § 1983 Claims

■ Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Despite these protections, "[n]ot every state law tort becomes an actionable constitutional tort under section 1983 because it was committed by a state actor. Thus, our initial inquiry is whether the alleged actions, if taken as true, deprived [the plaintiff] of a constitutional right." *Bisignano v. Harrison Cent. Sch. Dist.,* 113 F.Supp.2d 591, 595–96 (S.D.N.Y.2000) (citing *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) and *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). To establish a claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was "committed by a person acting under color of state law," and "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545,

---

**6.** Plaintiff brings his excessive use of force and assault and battery claims against defendants Luther, Thompson, and Murphy. Because the Court has already dismissed Plaintiff's claims against Thompson and Murphy

(*see* Part V of this Decision and Order), the Court's discussion relating to Plaintiff's excessive use of force and assault and battery claims applies to Deputy Luther only.

547 (2d Cir.1994). Defendants do not dispute that they were acting under color of state law, but they do contend that their actions did not violate Plaintiff's constitutional rights. (Dkt. 23–5 at 10–12). As discussed below, the Court finds that there are disputed issues of material fact as to the reasonableness of Deputy Luther's use of force against Plaintiff. Therefore, Deputy Luther is not entitled to summary judgment on Plaintiff's excessive use of force, assault, and battery claims against him in his individual capacity.

### B. Plaintiff's § 1983 Claim Pursuant to the Fourteenth Amendment

As an initial matter, *"all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (emphasis in original); *see also Morgan v. Cnty. of Nassau,* 720 F.Supp.2d 229, 237 (E.D.N.Y.2010) ("Generally, the Second Circuit has held that courts should analyze an excessive force claim related to an arrest or seizure under the Fourth Amendment, and analyze all other excessive force claims under the Fourteenth Amendment.") (citing *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998)); *Barrett v. City of Newburgh,* No. 13–cv–04118 (NSR), 2014 WL 1092176, at *3, 2014 U.S. Dist. LEXIS 36841, at *8 (S.D.N.Y. Mar. 18, 2014) ("A claim that a law enforcement officer has used excessive force falls under the Fourth Amendment and does not implicate due process considerations.") (citing *Graham,* 490 U.S. at 395, 109 S.Ct. 1865). "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.'" *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. 1865 (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Plaintiff contends that Defendants allegedly used excessive force against him during an arrest, and Defendants do not dispute that the alleged use of excessive force took place during an arrest. (Dkt. 23–1 at ¶¶ 1–2; Dkt. 27–1 at ¶¶ 1–2). Therefore, Plaintiff's 42 U.S.C. § 1983 action is properly analyzed under the Fourth Amendment rather than the Fourteenth Amendment.[7]

### C. Plaintiff's § 1983 Claim Pursuant to the Fourth Amendment and Assault and Battery Claim

"Claims arising from the use of force during an arrest are judged by the 'objective reasonableness' standard of the Fourth Amendment." *Piper v. City of Elmira,* 12 F.Supp.3d 577, 587 (W.D.N.Y. 2014) (citing *Graham,* 490 U.S. at 397, 109 S.Ct. 1865). This "objective test" requires courts to judge the use of force:

from the perspective of a reasonable officer on the scene, and with the understanding that officers have to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of

---

7. "In practical terms, the determination of whether to apply the Fourth or Fourteenth Amendment will dictate how stringent a standard to apply to the analysis. A Fourth Amendment excessive force claim is analyzed under an objective, reasonableness standard, while a Fourteenth Amendment claim relies on a more stringent 'shocks the conscience' test." *Morgan v. Cnty. of Nassau,* 720 F.Supp.2d 229, 237 (E.D.N.Y.2010) (citing *Hemphill,* 141 F.3d at 416–18).

force that is necessary in a particular situation.

*C.G. v. City of New York,* No. 12–CV–1606 (ARR)(VVP), 2013 WL 5774291, at *6, 2013 U.S. Dist. LEXIS 153020, at *22 (E.D.N.Y. Oct. 24, 2013) (quoting *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865) (quotations omitted). This approach requires the court to " 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion.' " *Tenn. v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). The use of some physical force may be necessary, and " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)). "Determining whether the officer's use of force was reasonable is a fact-intensive inquiry in which the court should consider the nature of the crime, whether the suspect was a threat to the safety of the officers or to others, and whether the suspect was attempting to resist or evade arrest." *C.G.,* 2013 WL 5774291, at *7, 2013 U.S. Dist. LEXIS 153020, at *22 (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).

 It is well-settled that "[t]he right to make a lawful arrest carries with it the right to use reasonable force to effectuate that arrest." *Lieberman v. City of Rochester,* No. 07–CV–6316L, 2011 U.S. Dist. LEXIS 46295, at *14–15 (W.D.N.Y. Apr. 29, 2011), *aff'd,* 558 Fed.Appx. 38 (2d Cir.2014) (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). An officer is justified in using excessive force in response to a suspect resisting arrest. *Sullivan v. Gagnier,* 225 F.3d 161, 165–66 (2d Cir.2000). As

stated above, "[a] court reviewing the reasonableness of the force used to effect a particular seizure under the Fourth Amendment must engage in careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. This standard evaluates the reasonableness of the force used by considering the totality of the circumstances faced by the officer on the scene . . . ." *Ortiz v. Vill. of Monticello,* No. 06 Civ. 2208(ER), 2012 WL 5395255, at *11, 2012 U.S. Dist. LEXIS 158428, at *34–35 (S.D.N.Y. Nov. 2, 2012) (internal quotations and citation omitted).

 The standard for evaluating excessive force involves three specific considerations, including: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir.2010) (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). "Accordingly, police receive a fairly wide zone of protection in close cases involving potential danger, emergency conditions, and other exigent circumstances." *Thompson v. City of Meriden,* No. 3:94–CV–1950(EBB), 1999 WL 301693, at *6, 1999 U.S. Dist. LEXIS 6991, at *20 (D.Conn. Apr. 14, 1999). However, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 123 (2d Cir.2004).

 In his amended declaration, Plaintiff contends that the deputies used excessive force against him in the following

ways: (1) Deputy Luther punched him to the side of the head (Dkt. 29 at ¶ 10); (2) Deputy Re and Deputy Luther forcefully removed him from the vehicle by "grabbing, tugging and pulling," and slammed him to the ground (*id.* at ¶¶ 11–12); and (3) Deputy Luther sprawled him over the side of his squad car, twisted his wrists, and struck the back of his thigh (*id.* at ¶ 17). Plaintiff also alleges that one of the deputies placed his knee on Plaintiff's face "with such force it felt as though [Plaintiff's] skull was being crushed." (*Id.* at ¶ 14).

Despite the contentions contained in Plaintiffs amended declaration, it is undisputed that it was not Deputy Luther who punched Plaintiff in the head, twisted his wrists, or struck him in the thigh, because Plaintiff himself has admitted that it was not Deputy Luther who engaged in this conduct. In his response to Defendants' Local Rule 56(a)(1) Statement, Plaintiff represents that it is undisputed that Deputy Re was the field training officer for Deputy Luther. (Dkt. 23–1 at ¶ 9; Dkt. 27–1 at ¶ 9). Similarly, in his Local Rule 56(a)(2) Statement of Additional Material Facts, Plaintiff himself admits that Deputy Re was the field training officer for Deputy Luther. (Dkt. 27–1 at 13, ¶ 6). It is also undisputed that Plaintiff does not know the name of the deputy who struck him in the face (Dkt. 23–1 at ¶ 15; Dkt. 27–1 at ¶ 15; Dkt. 23–16 at 19:23–25), but that he was struck by the deputy he identified as the "training deputy." (Dkt. 23–1 at ¶ 18; Dkt. 27–1 at ¶ 18). At his 50–h hearing, Plaintiff testified multiple times that the deputy who punched him in the face was the training deputy. (Dkt. 27–4 at 22:9–11, 20–23). With regard to the alleged injury to Plaintiff's wrist and thigh, it is undisputed that the deputy who twisted Plaintiff's wrists was the "training deputy." (Dkt. 23–1 at ¶ 16; Dkt. 27–1 at ¶ 16). In his complaint, Plaintiff alleges

that the senior officer stood him up, sprawled him over the trunk of the squad car, twisted his wrists, and struck the back of his thigh. (Dkt. 1 at ¶¶ 37, 39). Plaintiff also testified that the training deputy stood him up and walked him to the police vehicle, after which that deputy twisted his wrists. (Dkt. 23–16 at 27:2–4). Taking the admissions made by Plaintiff in his Statement of Facts, and at his deposition and 50–h hearing, it is undisputed that Plaintiff was allegedly battered by Deputy Re, the training officer—not Deputy Luther. Of course, Deputy Re is not named as a defendant—only Deputy Luther.

Plaintiff attempts to create an issue of fact by submitting a contradictory declaration and an inconsistent statement of facts in opposition to Defendants' motion for summary judgment. In his amended declaration, Plaintiff contradicts his response to Defendants' Local Rule 56(a)(1) Statement by stating that Deputy Re was the trainee officer and Deputy Luther was the training officer. (Dkt. 29 at ¶ 15). Plaintiff's amended declaration also contradicts his 50–h and deposition testimony by stating that he was assaulted by Deputy Luther. (*Id.* ¶ 10). At no time prior to the submission of his declaration in opposition to summary judgment was Plaintiff able to identify the deputy who assaulted him as Deputy Luther.

■ Plaintiff's submissions run afoul of the "sham issue of fact" doctrine, "which prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Prods. Liab. Litig.,* 707 F.3d 189, 193 (2d Cir.2013), *cert. denied,* —— U.S. ——, 133 S.Ct. 2783, 186 L.Ed.2d 234 (2013); *see also Hayes v. New York City Dep't of Corrs.,* 84 F.3d 614, 619 (2d Cir.1996) ("a party may not create an issue of fact by submitting an affidavit in

opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. 'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'") (citation omitted); *Odom v. Dixion*, No. 04–CV–889F, 2008 WL 466255, at *10, 2008 U.S. Dist. LEXIS 11748, at *29–30 (W.D.N.Y. Feb. 15, 2008) ("Plaintiff's later assertion in opposition to summary judgment that he was provided with non-kosher utensils with which to consume his kosher meal . . . is inconsistent with Plaintiff's allegation that only plastic spoons were provided. . . . Significantly, 'factual' issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.").

Plaintiff has admitted that Deputy Re was the training officer, and he also testified at his 50–h hearing that it was the training officer who struck him and twisted his wrists. He cannot now create an issue of fact on this point by submitting a declaration that, without elaboration or explanation, simply attempts to contradict his earlier sworn testimony.

■ However, Deputy Luther is not entitled to summary judgment on Plaintiff's excessive use of force and assault and battery claims because there are disputed issues of material fact regarding the amount of force that was necessary for the deputies to effectuate Plaintiff's arrest. Although Plaintiff concedes that he did not comply with the deputies' order to exit the vehicle on four occasions (Dkt. 27–1 at ¶ 11; Dkt. 23–16 at 18:8–23) and that he disobeyed an order to keep his hands on the steering wheel (Dkt. 23–10 at 73:7–21; Dkt. 23–16 at 16:15–24), there are disputed

issues of material fact regarding the extent to which Plaintiff continued to be uncooperative during his arrest, and whether the deputies' use of force was reasonable under the circumstances.

For example, Plaintiff testified that he did take his hands off of the steering wheel when turning to face the deputies; however, he also testified that he complied with their order to place his hands on the steering wheel at all other times, and he only placed his right hand between the seat and the console after he was struck. (Dkt. 23–10 at 73:7–25, 74:2–16). However, Defendant Luther contends that Plaintiff removed his right hand from the wheel and placed it between the seat and the console, and that he did not know if Plaintiff was reaching for a weapon. (Dkt. 23–3 at ¶ 7). Deputy Luther also contends that Plaintiff refused the deputies' request to place his hands back on the steering wheel. (*Id.*). Granting summary judgment in favor of Deputy Luther would require the Court to make a factual determination as to whether Plaintiff placed his right hand between the seat and the center console such that the deputies feared for their safety, and properly responded by using force against Plaintiff. These types of factual determinations should be made by a jury rather than a Judge. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir.1987) ("[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

Furthermore, while Plaintiff contends that he did not resist the deputies' efforts to apply handcuffs to his wrists (Dkt. 23–10 at 81:3–5, 82:2–6, 20–25, 83:2–3), Defen-

dant Luther contends that Plaintiff continued resisting arrest after he was removed from the vehicle and resisted the deputies' efforts to handcuff him. (Dkt. 23–3 at ¶ 8). Again, granting summary judgment in favor of Deputy Luther would require the Court to make a factual determination as to whether Plaintiff resisted the deputies while they were attempting to apply handcuffs to his wrists, such that the deputies properly responded by slamming Plaintiff to the ground and placing a knee on his head and back. Again, this type of factual determination is appropriate for a jury—not for a Judge.

 Although there is no issue of material fact that Deputy Luther neither punched Plaintiff in the face nor twisted his wrists and struck him in the thigh, Defendants do not dispute that Deputy Luther was at least present at the scene of Plaintiff's arrest when the alleged excessive use of force against Plaintiff occurred. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). "An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers. Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Terebesi v. Torreso*, 764 F.3d

217, 243–44 (2d Cir.2014) (quoting *Anderson*, 17 F.3d at 557). Although the parties have not briefed any failure to intervene issue,[8] Deputy Luther's undisputed presence at the scene of the arrest and his apparent failure to intervene in any excessive use of force against Plaintiff precludes the Court from granting summary judgment in his favor.

 Defendants argue that even if Deputy Luther used excessive force, he is entitled to qualified immunity. (Dkt. 23–5 at 12). Qualified immunity shields federal and state officials from suit "'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.'" *Terebesi*, 764 F.3d at 230 (quoting *Reichle v. Howards*, — U.S. —, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)). "A right is 'clearly established' if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Beckles v. City of New York*, 492 Fed. Appx. 181, 182 (2d Cir.2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "'Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity.'" *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir.2003) (quoting *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir.2002)).

 The existence of factual disputes precludes a finding of qualified immunity

---

**8.** "A defendant is liable for failing to intervene only where there has been an underlying constitutional violation warranting intervention. The failure to intervene is a theory of liability that derives meaning from the underlying violation (here, excessive force), not a separate claim.... It is enough that the facts alleged in the complaint show that [the defendant] failed to intervene to prevent [the other defendant's] unconstitutional conduct." *Claiborne v. Blauser*, No. 2:10–cv–2427 LKK EFB P, 2013 WL 1384995, at *5, 2013 U.S. Dist. LEXIS 49103, at *12–13 (E.D.Ca. Apr. 4, 2013), *adopted*, 2013 WL 1963515, 2013 U.S. Dist. LEXIS 67143 (E.D.Cal. May 9, 2013).

because "[t]he reasonableness of a police officer's conduct is at issue in both a Fourth Amendment excessive force analysis as well as step two of the qualified immunity test." *Benson v. Yaeger,* No. 05–CV–784S, 2009 WL 1584324, at *6, 2009 U.S. Dist. LEXIS 47555, at *20 (W.D.N.Y. June 3, 2009) (citing *Cowan v. Breen,* 352 F.3d 756, 764 (2d Cir.2003)). "[I]n excessive force cases, the qualified immunity and Fourth Amendment analyses often overlap and present a single question: "[w]hether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful." " *Piper,* 12 F.Supp.3d at 591 (internal quotations and citations omitted) (second alteration in original).

■ Accordingly, when there are "factual disputes concerning the level of force that was used and whether Plaintiff resisted arrest or presented an objectively reasonable threat to the officers' safety," the granting of qualified immunity on summary judgment is inappropriate. *Marcano v. City of Schenectady,* No. 1:12–CV–00036, 38 F.Supp.3d 238, 263, 2014 WL 3953198, at *15, 2014 U.S. Dist. LEXIS 111967, at *47 (N.D.N.Y. Aug. 13, 2014); *see also Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir.1999) (issues of fact on reasonableness of force used preclude summary judgment on defense of qualified immunity); *Piper,* 12 F.Supp.3d at 591 ("In this case, my determination that issues of material fact exist as to the reasonableness of the officers' use of force justifies denial of summary judgment on the grounds of qualified immunity."). Therefore, Deputy Luther is not entitled to summary judgment on the issue of qualified immunity.

## VII. Punitive Damages

■ Plaintiff's fifth cause of action purports to be for punitive damages against the deputies. (Dkt. 1 at ¶¶ 87–89). As an initial matter, "punitive damages are a remedy and not a separate cause of action." *Eldridge v. Rochester City Sch. Dist.,* 968 F.Supp.2d 546, 563 (W.D.N.Y. 2013). Therefore, the Court will treat Plaintiff's cause of action for punitive damages as a remedy against Deputy Luther for his alleged excessive use of force. *Id.* at 564.

■ "Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). The purpose of punitive damages is " 'to punish the defendant and deter him and others from similar conduct in the future.' " *Lee,* 101 F.3d at 809 (quoting *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992)). Although punitive damages are not available against municipalities or against individuals sued in their official capacities, punitive damages may be awarded against defendants sued in their individual capacities. *De Michele v. City of New York,* No. 09 Civ. 9334(PGG), 2012 WL 4354763, at *22, 2012 U.S. Dist. LEXIS 136460, at *71–72 (S.D.N.Y. Sept. 24, 2012).

■ Based on the record before the Court, it is premature to preclude Plaintiff from pursuing punitive damages at this time. " 'Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiffs['] proof of sufficiently serious misconduct.' " *Cooper v. City of New Rochelle,* 925 F.Supp.2d 588, 613 (S.D.N.Y. 2013) (quoting *Picciano v. McLoughlin,* 723 F.Supp.2d 491, 506 (N.D.N.Y.2010)); *see also Picciano,* 723 F.Supp.2d at 506 ("Where the plaintiff has provided sufficient evidence to overcome summary judg-

ment with respect to excessive force, the Court cannot state as a matter of law that the [plaintiff] is not entitled to punitive damages.") (internal quotations and citation omitted); *Emblen v. Port Auth. of New York/New Jersey*, 89 Fair. Empl. Prac. Cas. (BNA), 2002 WL 498634, at *12, 2002 U.S. Dist. LEXIS 5537, at *38 (S.D.N.Y.2002) ("[B]ecause [plaintiff] has provided sufficient evidence to overcome summary judgment, the Court cannot state as a matter of law that [plaintiff] is not entitled to punitive damages.") (first alteration in original); *Long v. Bristol Twp.*, No. 10–1069, 2012 WL 2864410, at *21, 2012 U.S. Dist. LEXIS 96591, at *67 (E.D.Pa. July 11, 2012) ("[t]he objective standard of callous or reckless indifference that suffices for an award of punitive damages is not far removed from the standard for denying qualified immunity to the officers—whether a reasonable officer would have known that his conduct violated a clearly established constitutional right. Therefore any claim ... that would result in our denying qualified immunity could also be the basis for punitive damages.") (quoting *Russoli v. Salisbury Twp.*, 126 F.Supp.2d 821, 873 (E.D.Pa.2000)) (alteration in original) (internal quotations omitted).

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Defendants are entitled to summary judgment on all of Plaintiff's claims, except for Plaintiff's excessive force, assault, and battery claims against Deputy Luther in his individual capacity. Furthermore, Plaintiff may pursue punitive damages against Deputy Luther in his individual capacity at trial.

SO ORDERED.